IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AZMI ATTIA, MARK BARR, KEVIN CONROY, and all other individuals similarly situated,<br><br>          Plaintiffs,<br><br>                    v.<br><br>EXXON MOBIL CORPORATION, SUZANNE McCARRON, MALCOLM FARRANT, BETH CASTEEL, DANIEL LYONS, and LEN FOX,<br><br>                    Defendants. | Case No. 4:16-cv-03484<br><br>Honorable Keith P. Ellison |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

OF COUNSEL:

Mark Trachtenberg
Texas State Bar No. 24008169
S.D. Tex. Bar No. 24584
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, TX 77010-2007
Telephone: (713) 547-2000
Facsimile: (713) 547-2600

Nina Cortell*
Texas State Bar No. 04844500
Daniel H. Gold*
Texas State Bar No. 24053230
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
*pro hac vice applications forthcoming

Daniel J. Kramer (*pro hac vice*)
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorney-in-Charge for Defendants*

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page(s)**

SUMMARY OF ARGUMENT ....................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................................... 4

STATEMENT OF THE ISSUES ................................................................................................. 4

SUMMARY OF PLAINTIFFS' ALLEGATIONS AND RELEVANT FACTS ...................... 5

    A.   The ExxonMobil ESOP ............................................................................... 5

    B.   The Alleged Misrepresentations and Nondisclosures ................................ 6

    C.   Alternatives Allegedly Available to the Plan Trustee ................................ 6

    D.   Plaintiffs' Claims ........................................................................................ 8

LEGAL STANDARDS ................................................................................................................ 8

ARGUMENT ............................................................................................................................... 9

I.     Plaintiffs' Claim Against The Individual Defendants Should Be Dismissed. .................. 9

    A.   Plaintiffs Do Not Satisfy *Dudenhoeffer*'s Pleading Requirements ............................ 9

         1.   Plaintiffs' Allegations That Fiduciaries Should Have Made Additional Disclosures or Halted Purchases of Company Stock Are Insufficient Under *Dudenhoeffer* ........................................................................ 10

         2.   Plaintiffs' Allegations That Defendants Should Have Invested In a "Hedging Product" to Protect Participants from Loss Also Do Not Satisfy *Dudenhoeffer*. ....................................................................... 15

    B.   The Complaint Does Not Plausibly Allege Any False or Misleading Statements or Actionable Nondisclosure ................................................... 17

         1.   Plaintiffs' Claim that ExxonMobil's Disclosures During the Class Period Failed to Recognize the Environmental Risks Caused by Climate Change Is Inconsistent with the Company's Disclosures And Other Public Information. ....................................................................... 17

2.  Binding SEC Regulations Preclude Consideration of the Impact of Future Regulations when Estimating Reserves, and thus Cannot Be Reconciled with Plaintiffs' "Stranded Assets" Theory........................................18

3.  Plaintiffs' Allegations that ExxonMobil Should Have Written Down the Value of Its Assets Are No More Than Conclusory Disagreements with ExxonMobil's Business Judgments. ...................................................................20

4.  Plaintiffs Have Failed to Sufficiently Allege that ExxonMobil Misrepresented or Omitted Any Material Facts About Its Implied Cost of Carbon. ..........................................................................................................21

C.  Plaintiffs Do Not Plausibly Allege That the Individual Defendants Knew or Should Have Known That Company Disclosures Were False or Misleading. .......... 22

D.  The Complaint Does Not State a Claim for Breach of the Duty of Loyalty. ............ 22

II.   Plaintiffs' Claim Against ExxonMobil Should Be Dismissed......................................... 23

III.  The Complaint Should Be Dismissed With Prejudice...................................................... 25

CONCLUSION ......................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*United States ex rel. Adrian* v. *Regents of Univ. of Cal.*,
   363 F.3d 398 (5th Cir. 2004) ...................................................................25

*Am. Tobacco Co.* v. *Grinnell*,
   951 S.W.2d 420 (Tex. 1997)...................................................................16

*Amgen Inc.* v. *Harris*,
   136 S. Ct. 758 (2016)............................................................1, 9, 10, 12

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009)................................................................................8

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007)................................................................................8

*Bell* v. *Exec. C'ee of the United Food and Com. Workers Pen. Plan for Employees*,
   191 F. Supp. 2d 10 (D.D.C. 2002) ........................................................17

*In re BP p.l.c. Sec. Litig.*,
   No. 4:10-cv-4214, 2015 WL 1781727 (S.D. Tex. Mar. 4, 2015) ("*BP I*")..............7, 22, 23, 24

*In re BP p.l.c. Sec. Litig.*,
   866 F. Supp. 2d 709 (S.D. Tex. 2012) ("*BP II*") ..............................17, 22

*In re BP p.l.c. Sec. Litig.*,
   No. 4:10-cv-4214, 2015 WL 6674576 (S.D. Tex. Oct. 30, 2015) ("*BP III*") ........................24

*In re BP p.l.c. Sec. Litig.*,
   No. 4:10-cv-4214, 2017 WL 914995 (S.D. Tex. Mar. 8, 2017) ("*BP IV*") .................... passim

*Carlton* v. *Cannon*,
   184 F. Supp. 3d 428 (S.D. Tex. 2016) ...................................................20

*In re Citigroup ERISA Litig.*,
   104 F. Supp. 3d 599 (S.D.N.Y. 2015).....................................................17

*In re Citigroup ERISA Litig.*,
   662 F.3d 128 (2d Cir. 2011).....................................................................22

*City of Omaha, Neb. Civilian Emps. Ret. Sys.* v. *CBS Corp.*,
   679 F.3d 64 (2d Cir. 2012)......................................................................20

*In re Dynegy, Inc. ERISA Litig.*,
   309 F. Supp. 2d 861 (S.D. Tex. 2004) ...................................................24

*In re Exxon Mobil Corp. Sec. Litig.*,
    387 F. Supp. 2d 407 (D.N.J. 2005) ...................................................................20

*Fifth Third Bancorp* v. *Dudenhoeffer*,
    134 S. Ct. 2459 (2014) ........................................................................... passim

*Firefighters Pension & Relief Fund of the City of New Orleans* v. *Bulmahn*,
    53 F. Supp. 3d 882 (E.D. La. 2014) .............................................................5, 19

*Funk* v. *Stryker Corp.*,
    631 F.3d 777 (5th Cir. 2011) .........................................................................5

*Globis Partners, L.P.* v. *Plumtree Software, Inc.*,
    No. 1577-VCP, 2007 WL 4292024 (Del. Ch. Nov. 30, 2007) ...............................21

*Gonzalez* v. *Peabody Energy Corp.*, No. 4:15CV00916 AGF , 2017 U.S. Dist. LEXIS
    48468, *22, *25 (E.D. Mo. Mar. 30, 2017) ...................................................11, 13

*Graham* v. *Fearon*,
    No. 1:16-cv-2366, 2017 WL 1113358 (N.D. Ohio March 24, 2017) ......................13, 16

*Harris Trust & Sav. Bank* v. *Salomon Smith Barney, Inc.*,
    530 U.S. 238 (2000)....................................................................................22

*Harris* v. *Amgen, Inc.*,
    788 F.3d 916 (9th Cir. 2015) ..................................................................12, 13, 15

*In re Idearc ERISA Litig.*,
    No. 3:09-CV-2354-N, 2016 WL 7189981 (N.D. Tex. Oct. 4, 2016) ...................... passim

*Jander* v. *Int'l Bus. Machs. Corp.*,
    No. 15-cv-3781, 2016 WL 4688864 (S.D.N.Y. Sept. 7, 2016) ..............................11

*In re JPMorgan Chase & Co. ERISA Litig.*,
    No. 12-cv-04027 (GBD), 2016 WL 110521 (S.D.N.Y. Jan. 8, 2016) ......................11, 16

*Kapps* v. *Torch Offshore, Inc.*,
    379 F.3d 207 (5th Cir. 2004) .......................................................................18

*Kirschbaum* v. *Reliant Energy, Inc.*,
    526 F.3d 243 (5th Cir. 2008) .......................................................................16

*Kopp* v. *Klein*,
    722 F.3d 327 (5th Cir. 2013) .................................................................16, 23, 24

*In re Lehman Bros. Sec. & ERISA Litig.*,
    113 F. Supp. 3d 745 (S.D.N.Y. 2015)..............................................................14

*Lovelace* v. *Software Spectrum, Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ...................................................................5

*Martone* v. *Whole Foods Market, Inc.*,
   No. 1:15-CV-877 RP, 2016 WL 5416543 (W.D. Tex. Sept. 28, 2016) ...................11, 12, 13

*Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*,
   135 S. Ct. 1318 (2015) ...................................................................19

*Plumbers & Steamfitters Local 773 Pension Fund* v. *Can. Imperial Bank of Commerce*,
   694 F. Supp. 2d 287 (S.D.N.Y. 2010) ...................................................................19

*Rinehart* v. *Akers*,
   722 F.3d 137 (2d Cir. 2013) ...................................................................22

*Rinehart* v. *Lehman Bros. Holdings Inc.*,
   817 F.3d 56 (2d Cir. 2016) ...................................................................11, 12

*Sommers Drug Stores Co. Emp. Profit Sharing Trust* v. *Corrigan Enters., Inc.*,
   793 F.2d 1456 (5th Cir. 1986) ...................................................................24

*Whitley* v. *BP, p.l.c.*,
   838 F.3d 523 (5th Cir. 2016) ................................................................. passim

**STATUTES**

29 U.S.C. § 1001 ...................................................................1

29 U.S.C. § 1002(21)(A)(i) ...................................................................24

29 U.S.C. § 1021(i)(2)(A) ...................................................................7

29 U.S.C. § 1104 ...................................................................8, 23

29 U.S.C. § 1132 ...................................................................4

**OTHER AUTHORITIES**

17 C.F.R. § 210.4-10(22) ...................................................................3, 19

Fed. R. Civ. P. 12(b)(6) ...................................................................1, 8

Defendants Exxon Mobil Corporation ("ExxonMobil" or the "Company"), Suzanne McCarron, Malcolm Farrant, Beth Casteel, Daniel Lyons, and Len Fox (the "Individual Defendants") submit this memorandum of law in support of their motion to dismiss the Amended Class Action Complaint (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6).

## SUMMARY OF ARGUMENT

This is a stock-drop case under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") involving ExxonMobil's employee stock ownership plan ("ESOP"). The Complaint does not satisfy the stringent pleading requirements for asserting such claims, and courts—including this Court only last month—have held that allegations substantially identical to those here do not satisfy those pleading requirements. The Complaint should also be dismissed for the additional reason, among others, that it does not plausibly allege that ExxonMobil misrepresented or failed to disclose any material facts.

Plaintiffs are ESOP participants who allege that between November 2015 and October 2016 the value of ExxonMobil's stock was artificially inflated by the Company's supposed failure to disclose risks to its business from climate change. They contend that the Individual Defendants, who serve as the plan's trustees, should have protected plan participants by publicly disclosing the allegedly concealed information, suspending purchases of ExxonMobil stock in the plan, or hedging the plan's ExxonMobil holdings. Plaintiffs contend that the defendants breached their duties under ERISA by not doing so.

The Complaint does not satisfy the exacting pleading standard set forth by the Supreme Court in *Fifth Third Bancorp* v. *Dudenhoeffer*, 134 S. Ct. 2459 (2014) and *Amgen Inc.* v. *Harris*, 136 S. Ct. 758 (2016), and by the Fifth Circuit in *Whitley* v. *BP, p.l.c.*, 838 F.3d 523 (5th Cir. 2016). Under those cases, where, as here, plaintiffs seek to assert ERISA claims based upon

alleged nonpublic information showing that the employer's stock was overvalued, they must, among other things, plausibly allege facts establishing an alternative action that the defendants could have taken that was (1) "consistent with the securities laws," *Dudenhoeffer*, 134 S. Ct. at 2472, and (2) "so clearly beneficial that a prudent fiduciary *could not conclude* that it would be more likely to harm the fund than to help it," *Whitley*, 838 F.3d at 529 (emphasis in original). As this Court emphasized last month in denying leave to amend an ERISA stock-drop complaint, *In re BP p.l.c. Sec. Litig.*, No. 4:10-cv-4214, 2017 WL 914995, at *3 n.7 (S.D. Tex. Mar. 8, 2017) (Ellison, J.) ("*BP IV*"), *Dudenhoeffer* places a burden on plaintiffs that is "virtually insurmountable."

The Fifth Circuit, this Court in *BP IV*, and other courts have specifically rejected as insufficient two of the purported alternatives plaintiffs propose here—disclosing the allegedly nonpublic information, and freezing purchases of Company stock. As those courts have reasoned, and as plaintiffs concede (Compl. ¶¶ 50, 117, 131, 133), a prudent fiduciary could conclude that those actions would likely harm plan participants "by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund." *Dudenhoeffer*, 134 S. Ct. at 2473. As the Fifth Circuit recently emphasized, based on this fact alone, "a prudent fiduciary could very easily conclude that such actions *would* do more harm than good." *Whitley*, 838 F.3d at 529 (emphasis in original). Plaintiffs' allegation that the harm caused by the alternatives they urge would be outweighed by the purported benefits of an early disclosure, on the ground that the facts would inevitably be disclosed, is improperly speculative and generic, and courts have repeatedly held that such allegations do not satisfy *Dudenhoeffer*.

Plaintiffs' third proposed alternative—purchasing a security to hedge against a decline in ExxonMobil's stock price while allegedly possessing inside information that the stock was

overvalued—also does not satisfy *Dudenhoeffer*. That is because "hedging" based on inside information would run afoul of the securities laws, and the ERISA duty of prudence "does not require a fiduciary to break the law." *Dudenhoeffer*, 134 S. Ct. at 2472 (citation omitted). Plaintiffs' proposed hedging alternative also is insufficient because, as another federal court just held in a case with substantially identical allegations, the Complaint does not allege facts showing that no reasonable fiduciary here could conclude that it would cause more harm than good to Plan participants. **(Point I.A, below.)**

Plaintiffs' claims should be dismissed for the independent reason that the Complaint does not plausibly allege the existence of material information that ExxonMobil misrepresented or improperly failed to disclose. Thus:

- Plaintiffs contend that ExxonMobil held material nonpublic information about the risks of climate change, but they identify no such information, and ignore the abundance of information available to investors about that very subject, including information ExxonMobil itself provided.

- Plaintiffs' allegations that ExxonMobil's estimates of its proved reserves failed to account for future climate change regulations are similarly deficient. Binding SEC regulations dictating how ExxonMobil and other oil companies must calculate proved reserves expressly prohibit consideration of potential regulatory changes, and instead require the calculation to be based on "existing economic conditions, operating methods, and government regulations." 17 C.F.R. § 210.4-10(22) (emphasis added). And, in all events, plaintiffs plead no facts indicating that ExxonMobil misrepresented or failed to disclose any facts about the potential impact of future developments on its business, but merely express disagreement with ExxonMobil's views. But plaintiffs' disagreement does not establish that ExxonMobil's stock price was inflated or otherwise give rise to a claim. Plaintiffs' conclusory allegations that ExxonMobil should have written down the value of its assets sooner suffer from similar defects.

- Finally, plaintiffs' allegations that ExxonMobil employed an inaccurate "price of carbon" (a hypothetical price reflecting the Company's expectations about future regulatory action on carbon emissions) and that it did not disclose the price of carbon it used are conclusory and contrary to the Company's own public filings, which *do* disclose the price of carbon it uses. **(Point I.B, below.)**

Plaintiffs' claims against the Individual Defendants also fall short because (a) plaintiffs plead no facts to suggest that they knew of any nonpublic information about the value of

ExxonMobil's assets **(Point I.C, below)** and (b) plaintiffs' claim for breach of the duty of loyalty has the same defects as their claim for breach of the duty of prudence **(Point I.D, below).** Plaintiffs' claim that ExxonMobil breached its duty to monitor the Individual Defendants should be dismissed because plaintiffs do not adequately plead a primary breach by the Individual Defendants, and because ExxonMobil was not a monitoring fiduciary and thus owed no such duty. **(Point II, below.)** Finally, any dismissal should be with prejudice because the Complaint's deficiencies cannot be cured. **(Point III, below.)**

## NATURE AND STAGE OF THE PROCEEDINGS

This action was commenced on November 23, 2016. (ECF No. 1.) Plaintiffs assert claims under ERISA Section 502, 29 U.S.C. § 1132, on behalf of a class of current and former ExxonMobil employees and beneficiaries who invested in ExxonMobil's retirement savings plan between November 1, 2015 and October 28, 2016 (the "Class Period"). Plaintiffs seek to recover losses from the decline in ExxonMobil's stock price following what they allege was the public disclosure of information about the Company's energy reserves. (Compl. ¶¶ 1–9, 24, 27.) Plaintiffs filed the current Complaint on February 3, 2017. (ECF No. 36.)

## STATEMENT OF THE ISSUES

1.  Whether Count I for breach of fiduciary duty against the Individual Defendants should be dismissed for any of the following independent reasons:

    a.  Because it fails plausibly to allege, as required by *Dudenhoeffer*, any alternative action that the Individual Defendants could have taken, consistent with the federal securities laws, that a reasonable fiduciary could not have concluded would do more harm than good to the Plan.

    b.  Because the Complaint does not plausibly allege any actionable misrepresentation or nondisclosure by ExxonMobil.

    c.  Because the Complaint does not plausibly allege that the Individual Defendants knew or should have known that ExxonMobil's public statements were false or materially misleading.

      d.     Because, to the extent it is based on an alleged breach of the duty of loyalty, the Complaint fails for the above reasons and because the duty of loyalty does not contain a duty to disclose nonpublic information.

2.    Whether Count II against ExxonMobil for breach of the fiduciary duty to monitor should be dismissed for either of these independent reasons:

      a.     Because plaintiffs do not plausibly allege a primary breach by the Individual Defendants.

      b.     Because plaintiffs do not plausibly allege that ExxonMobil was a monitoring fiduciary that owed such a duty.

3.    Whether the Complaint should be dismissed with prejudice because plaintiffs cannot cure its fatal pleading deficiencies.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS AND RELEVANT FACTS[1]

### A.    The ExxonMobil ESOP

ExxonMobil sponsors a defined contribution benefit plan (the "Plan") that permits eligible employees to contribute to their retirement savings accounts. (Compl. ¶ 2.) The Plan is an ESOP. The Plan documents mandate that ExxonMobil common stock be an investment option and, to the extent that they choose to invest in ExxonMobil stock in the Plan, participants are permitted to direct the Trustee to do so. (*See id*. ¶¶ 2, 39.) A multimember trustee (the "Trustee"), consisting of five individuals holding specified corporate positions, is responsible for making investment decisions in accordance with ERISA and the Plan's terms. (*Id*. ¶ 40.) The Individual Defendants were Trustee members during the Class Period. (*Id*. ¶¶ 34–38.)

---

[1] This motion is based upon the Complaint's allegations, documents cited or incorporated by reference in the Complaint, and other documents of which the Court may take judicial notice. *See Funk* v. *Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (taking judicial notice on motion to dismiss of "matters of public record directly relevant to the issue at hand"); *Lovelace* v. *Software Spectrum, Inc.*, 78 F.3d 1015, 1018 n.1 (5th Cir. 1996) (considering on a motion to dismiss the "very documents that are alleged to contain the various misrepresentations or omissions," and "related documents that bear on the adequacy of the disclosure"); *Firefighters Pension & Relief Fund of the City of New Orleans* v. *Bulmahn*, 53 F. Supp. 3d 882, 901–02 (E.D. La. 2014) (taking judicial notice of publicly available documents "as an indication of the information available to the public at the time").

**B.    The Alleged Misrepresentations and Nondisclosures**

Plaintiffs allege that ExxonMobil did not disclose the risks to the Company's business posed by climate change and the possibility of future government regulation to limit carbon emissions. (*Id.* ¶¶ 4, 58–62.) They allege that ExxonMobil's public statements during the Class Period were false and misleading because:

- ExxonMobil allegedly did not disclose information in its possession showing "the environmental risks caused by global warming and climate change";

- ExxonMobil allegedly did not disclose that its reserves were overstated because, given the risks posed by climate change, it "would not be able to extract the existing hydrocarbon reserves [it] claimed to have" and its reserves would thus be "stranded"; and

- In valuing its assets, ExxonMobil allegedly employed an inaccurate "price of carbon"—a hypothetical implied cost reflecting the anticipated price impact of future regulatory actions to reduce carbon emissions.

(*Id.* ¶ 4.) Plaintiffs also allege that ExxonMobil's reserve disclosures and financial statements failed properly to account for the alleged decline in energy prices before and during the Class Period. (*Id.* ¶ 60.) They allege that the Individual Defendants knew or should have known these purported facts because they were "among Exxon's most senior officers." (*Id.* ¶ 11.) Plaintiffs contend that these alleged misrepresentations and omissions rendered Plan investments in ExxonMobil stock imprudent, and that the Individual Defendants violated their obligations of prudence and loyalty under ERISA by failing to protect Plan participants from the risk of loss if the matters allegedly misrepresented or not disclosed became public. As discussed below (pp. 17-22), plaintiffs' allegations that ExxonMobil failed to disclose material facts are refuted by the disclosures themselves and other publicly available documents.

**C.    Alternatives Allegedly Available to the Plan Trustee**

Plaintiffs identify three alternatives that they allege should have been pursued to protect Plan participants: (i) disclosing the alleged nonpublic information about ExxonMobil's reserves

(Compl. ¶¶ 104–124, 156–157), (ii) halting Plan investments in ExxonMobil stock (*id.* ¶¶ 125–135), or (iii) diverting some of the Plan's ExxonMobil stock holdings to a "low-cost hedging product" to offset losses when the purported fraud was revealed (*id.* ¶¶ 131–138).

*Disclosure*. Plaintiffs allege that the Individual Defendants should have caused the Company to make "corrective disclosures" or should have made such disclosures themselves. (*Id.* ¶¶ 104–124.) They concede that such disclosures likely would have caused ExxonMobil's stock price to drop (*id.* ¶ 117), and thereby caused a loss on the alleged $10 billion in ExxonMobil stock held by the Plan (*id.* ¶¶ 50, 107). They allege, however, that any prudent fiduciary would have known that "later disclosure of fraud leads to a harsher price correction" because "no fraud lasts forever." (*Id.* ¶¶ 21, 117–118.) Plaintiffs also allege that defendants should have predicted an increase in energy prices over the Class Period, that the Company's stock price would react more "gentl[y]" if an impairment were announced when oil prices were lower rather than higher, and that no reasonable fiduciary could conclude that such an announcement would do more harm than good. (*Id.* ¶¶ 17–21, 111–114.)

*Halting purchases*. Plaintiffs allege that the Individual Defendants should have halted Plan investments in ExxonMobil stock. (*Id.* ¶¶ 126–127.) Plaintiffs tacitly acknowledge that such a halt would be inconsistent with the Plan's requirement that ExxonMobil stock be an investment option available to participants at their election. (*Id.* ¶ 125.) Nor do plaintiffs dispute that halting investments in Company stock would require public disclosure, likely resulting in a decline in the Company's stock price. (*Id.* ¶¶ 131, 133.) *See also* 29 U.S.C. § 1021(i)(2)(A) (freeze on purchases in company-stock fund must be accompanied by notice of "the reasons for the blackout period" and "the expected beginning date and length of the blackout period"); *In re BP p.l.c. Sec. Litig.*, No. 4:10-cv-4214, 2015 WL 1781727, at *14 (S.D. Tex. Mar. 4, 2015) (Ellison,

J.) ("*BP I*") (plan fiduciaries would be obligated to disclose halt in new Company stock purchases), *rev'd on other grounds sub nom. Whitley*, 838 F.3d 523.

*Hedging*. Finally, plaintiffs allege that the Individual Defendants should have "invest[ed] some of the Plan's funds into a low-cost hedging product" to protect participants from declines in the Company's stock price. (Compl. ¶¶ 20, 131–138.) They describe these products as trusts "that pool funds together from a group of financially healthy and diverse companies" and "restore[] losses caused by declines in the price of company stock." (*Id.* ¶ 134.)

### D.    Plaintiffs' Claims

Plaintiffs allege in Count I that the Individual Defendants breached their duties of prudence and loyalty under ERISA § 404, 29 U.S.C. § 1104, by failing to protect Plan participants from the risk of loss if the allegedly undisclosed facts were disclosed. (*Id.* ¶¶ 149–159.) In Count II, plaintiffs allege that ExxonMobil breached its duty to monitor by not ensuring that the Individual Defendants complied with their fiduciary duties. (*Id.* ¶¶ 102–103, 160–163.)

## LEGAL STANDARDS

A court must dismiss a complaint under Rule 12(b)(6) unless the complaint pleads facts sufficient to state a claim that is facially plausible, meaning "above the speculative level." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555–56 (2007). Allegations that raise only "a sheer possibility" of, or are "merely consistent with," a defendant's liability, but that do not "nudge" the claim "across the line from conceivable to plausible," do not suffice. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 680 (2009) (internal quotation marks & citation omitted). Where there is a lawful, "obvious alternative explanation" for defendants' alleged conduct, plaintiffs must plead facts to rule out the lawful alternative. *Twombly*, 550 U.S. at 567.

**ARGUMENT**

**I.     PLAINTIFFS' CLAIM AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED.**

Count I of the Complaint should be dismissed because the Complaint does not plausibly allege (A) alternative actions that would have been consistent with the securities laws and that a prudent fiduciary could not have concluded would do more harm than good, as required by *Dudenhoeffer* and its progeny; (B) any materially false or misleading statements; or (C) that the Individual Defendants knew or should have known that any statements were false or misleading; and (D) does not state a claim for breach of the duty of loyalty.

**A.     Plaintiffs Do Not Satisfy *Dudenhoeffer*'s Pleading Requirements.**

Where, as here, plaintiffs allege that the defendants violated their ERISA duty of prudence on the basis of inside information, *Dudenhoeffer* requires plaintiffs plausibly to allege alternatives (i) that would have been "consistent with the securities laws," and (ii) that "a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." 134 S. Ct. at 2472–73. As the Fifth Circuit explained in *Whitley*, plaintiffs bear the "significant burden of proposing an alternative course of action so clearly beneficial that a prudent fiduciary *could not conclude* that it would be more likely to harm the fund than to help it." *Whitley*, 838 F.3d at 529 (emphasis in original); *see also Amgen*, 136 S. Ct. at 759–60 (holding that the "complaint itself" must show "that a prudent fiduciary . . . 'could not have concluded' that the alternative action 'would do more harm than good'") (quoting *Dudenhoeffer*, 134 S. Ct. at 2463)). Thus, under *Dudenhoeffer*, plaintiffs must allege an alternative action that *any* prudent fiduciary would pursue. This Court emphasized in *BP IV* that *Dudenhoeffer* "place[d] a burden on plaintiffs that is not often seen at the pleading stage," and noted that it was "not aware of any post-*Amgen* case in which a plaintiff met this significant burden." *Id.* at *3.

9

The *Dudenhoeffer* Court adopted this standard in light of the unique challenges confronted by ESOP fiduciaries, who are often (as they are here) company insiders, when they are alleged to have imprudently failed to act on the basis of inside information. *Dudenhoeffer*, 134 S. Ct. at 2469–70 (noting risk of placing ESOP fiduciaries in the untenable position of having to predict the future of the company's stock price, because if they keep investing and the stock goes down they can be sued for acting imprudently, while if they stop investing and the stock goes up they can be sued for disobeying the plan documents); *Amgen*, 136 S. Ct. at 759. Given these concerns, the Court stressed the need to "weed[] out meritless claims" at the outset by "careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently." *Dudenhoeffer*, 134 S. Ct. at 2471.

Plaintiffs' proposed alternatives of making additional public disclosures, freezing purchases of ExxonMobil stock by the Plan, or investing in a purported "hedging product" do not satisfy their pleading burden under *Dudenhoeffer*.

1.     **Plaintiffs' Allegations That Fiduciaries Should Have Made Additional Disclosures or Halted Purchases of Company Stock Are Insufficient Under *Dudenhoeffer*.**

Plaintiffs' allegations that the Individual Defendants should have made a purported corrective disclosure or halted purchases of the Company's stock are identical to allegations that courts—including the Supreme Court, the Fifth Circuit, this Court in *BP IV*, and district courts in this Circuit—have consistently rejected as insufficient. *See Amgen*, 136 S. Ct. at 760 (holding that plaintiff did not plausibly allege that fiduciaries "could not have concluded" that it would do more harm than good to remove employer stock fund from list of available investment options); *BP IV*, 2017 WL 914995, at *6–7 (holding that proposed amended complaint did not satisfy *Dudenhoeffer*); *Whitley*, 838 F.3d at 528–29 (holding that complaint did not adequately allege that fiduciaries should have either disclosed alleged nonpublic information or frozen investments

in company stock); *In re Idearc ERISA Litig.*, No. 3:09-CV-2354-N, 2016 WL 7189981, at *5–6 (N.D. Tex. Oct. 4, 2016) (dismissing ERISA complaint because it did "not plausibly allege that a prudent fiduciary could not have concluded" that corrective disclosure or freezing additional purchases would do more harm than good); *Martone* v. *Whole Foods Market, Inc.*, No. 1:15-CV-877 RP, 2016 WL 5416543, at *7 (W.D. Tex. Sept. 28, 2016) (granting motion to dismiss ERISA action based on alleged inside information because the complaint did not allege facts showing that disclosing alleged information or freezing investments in company stock could not be viewed as likely to do more harm than good).

Courts in other Circuits have also consistently dismissed such claims. *See Rinehart* v. *Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (dismissal warranted where plaintiff did not plead facts showing that a prudent fiduciary could not have viewed disclosure of nonpublic information as more likely to harm the fund than to help it); *Jander* v. *Int'l Bus. Machs. Corp.*, No. 15-cv-3781, 2016 WL 4688864, at *5–6 (S.D.N.Y. Sept. 7, 2016) (same); *In re JPMorgan Chase & Co. ERISA Litig.*, No. 12-cv-04027 (GBD), 2016 WL 110521, at *4 (S.D.N.Y. Jan. 8, 2016) (same), *aff'd sub nom. Loeza* v. *John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016); *see also Gonzalez* v. *Peabody Energy Corp.*, No. 4:15CV00916 AGF, 2017 U.S. Dist. LEXIS 48468, *22, *25 (E.D. Mo. Mar. 30, 2017) (dismissing ERISA stock-drop claims under *Dudenhoeffer*, where plaintiffs alleged that the company failed to disclose internal information about the impact on its business of future regulations regarding coal emissions).

As the Fifth Circuit reasoned in *Whitley*, a fiduciary could conclude that making a purported corrective disclosure or halting investments in company stock would cause a drop in the employer's stock price, and, "[b]ased on this fact alone," could do more harm than good:

> [Plaintiffs] theorize that BP stock was overpriced because BP had a greater risk
> exposure to potential accidents than was known to the market. Based on this fact

alone, it does not seem reasonable to say that a prudent fiduciary at that time
could not have concluded that (1) disclosure of such information to the public or
(2) freezing trades of BP stock—both of which would likely lower the stock
price—would do more harm than good. In fact, it seems that a prudent fiduciary
could very easily conclude that such actions *would* do more harm than good.

*Whitley*, 838 F.3d at 529 (emphasis in original); *see also Dudenhoeffer*, 134 S. Ct. at
2473 (noting that a prudent fiduciary could potentially conclude that stopping purchases or
publicly disclosing negative information "would do more harm than good to the fund by causing
a drop in the stock price and a concomitant drop in the value of the stock already held by the
fund"); *BP IV*, 2017 WL 914995, at *5 (similar).

The same rationale defeats plaintiffs' claims here. As plaintiffs concede, a purported
corrective disclosure would likely have caused a drop in ExxonMobil's stock price, thereby
imposing losses on the $10 billion in Company stock held by the Plan. (*See* Compl. ¶¶ 50, 107.)
Similarly, halting Plan investments in ExxonMobil stock would likely have had the same effect,
because, as noted above (pp 7-8), such an action would have to be publicly disclosed, and the
market likely would take such a disclosure "as a sign that . . . [defendants viewed ExxonMobil's]
stock as a bad investment." *Dudenhoeffer*, 134 S. Ct. at 2473; *see also Rinehart*, 817 F.3d at 68
(similar); *Whitley*, 838 F.3d at 529 (similar); *Martone*, 2016 WL 5416543, at *8 (similar). As
Judge Kozinski explained, "withdrawal of the fund as an investment option is the worst type of
disclosure: It signals that something may be deeply wrong inside a company but doesn't provide
the market with information to gauge the stock's true value." *Harris* v. *Amgen, Inc.*, 788 F.3d
916, 925–26 (9th Cir. 2015) (Kozinski, J., dissenting), *rev'd,* 136 S. Ct. 758. (The Supreme
Court subsequently reversed the Ninth Circuit and adopted Judge Kozinski's position. *Amgen*,
136 S. Ct. 758). *See also BP IV*, 2017 WL 914995, at *5 (noting that "an unusual disclosure by
ERISA fiduciaries could 'spook' the market, causing a more significant drop in price than if the
securities disclosure were made through BP's customary corporate representatives"). Thus, as in

those cases, a prudent fiduciary could well have concluded that such actions would do more harm than good to Plan participants.

Plaintiffs allege that "disclosure of the fraud was going to happen one way or another" and that "the sooner [defendants] acted, the less severe the drop." (Compl. ¶¶ 116–117.) But such generic allegations are inadequate under *Dudenhoeffer*. As Judge Kozinski reasoned:

> Under that theory, withdrawing the fund will *always* be the better option, because any stock price decline it may precipitate will be deemed "inevitable." But, for [*Dudenhoeffer's*] requirement to mean anything at all, the Supreme Court must have contemplated situations where a fiduciary could permissibly balance the long and short run effects of withdrawal on the share price, or account for the fact that a badly timed withdrawal could cause the stock value to drop below its efficient-market level. . . . [Under the "earlier disclosure" theory,] a fiduciary [would] *never* be safe from a lawsuit if he fails to withdraw the fund based on the reasonable belief that it will "do more harm than good to the fund by causing a drop in the stock price." . . . [This theory] renders that crucial language in [*Dudenhoeffer*] utterly without meaning.

*Harris*, 788 F.3d at 926 (Kozinski, J., dissenting). *See also, e.g.*, *Gonzalez*, 2017 U.S. Dist. LEXIS 48468, *22 (rejecting as insufficient allegation that earlier disclosure would have led to a smaller loss or allowed participants to better understand risks); *Graham* v. *Fearon*, No. 1:16-cv-2366, 2017 WL 1113358, at *5 (N.D. Ohio Mar. 24, 2017) ("[C]ourts have routinely rejected the allegation that 'the longer a fraud goes on, the harsher the correction' as support for corrective disclosure as a plausible alternative."); *Martone*, 2016 WL 5416543, at *8 (similar); *In re Idearc*, 2016 WL 7189981, at *6 (rejecting as insufficient allegation that freezing stock purchases would prevent plan from "throwing good money after bad") (quoting and citing Third Am. Compl. ¶ 303(c), *In re Idearc*, 3:09-CV-2354-N (ECF No. 106)).

These allegations fail for the additional reason that a reasonable fiduciary could conclude that the benefits, if any, of an immediate disclosure are outweighed by the immediate and foreseeable harm that a stock price drop would cause to the $10 billion in Company investments held by participants. The realization of any alleged benefits rests on such unknowable factors as

whether, when, how, and in what circumstances the information would ultimately be disclosed, and how the market might react to the disclosure. Plaintiffs fail to plead facts showing that no reasonable fiduciary could conclude that these speculative and uncertain benefits exceed the foreseeable harm from the actions they allege the Individual Defendants should have taken. *See BP IV*, 2017 WL 914995, at *6–7 (holding that proposed amended complaint did not satisfy *Dudenhoeffer* where plaintiffs did not plead facts from which Court could conclude that odds of future loss exceeded likelihood of immediate loss from disclosure).

Plaintiffs also allege that defendants should have predicted that the price of oil would be higher at the end of the Class Period than the beginning, and that accordingly the negative impact of a later impairment announcement would be greater than an earlier one. (*See* Compl. ¶¶ 17–19, 110–114.) But allegations based on an alleged failure to predict the price of oil does not state a claim because the duty of prudence "eschews hindsight" and "requires prudence, not prescience." *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 754 (S.D.N.Y. 2015). And plaintiffs' theory is nonsensical on its face: if oil prices are expected to climb, a prudent fiduciary could reasonably expect reserves to become *more* valuable and thus *less* likely to be impaired. Plaintiffs' allegation that any reasonable fiduciary would have expected oil prices to increase during the Class Period is also contradicted by their own allegations that global oil prices during the Class Period were "declining" and that ExxonMobil's debt rating was downgraded because of "expectations of continuing low oil prices." (*Id.* ¶¶ 6, 80.)

Finally, plaintiffs' disclosure alternative does not satisfy *Dudenhoeffer* for the independent reason that imposing a disclosure duty on ESOP fiduciaries here would conflict with the "comprehensive and tessellated statutory scheme for corporate disclosure" under the securities laws "that impose[] obligations on *certain* corporate officers to reveal information at

*specific* times." *Harris*, 788 F.3d at 927 (Kozinski, J., dissenting) (emphases in original). As Judge Kozinski explained, the Supreme Court in *Dudenhoeffer* sought to avoid imposing obligations on ERISA fiduciaries that "would be *broader* than the disclosure requirements under the securities laws." *Id.* at 926–27 (emphasis in original); *see Dudenhoeffer*, 134 S. Ct. at 2473 (emphasizing need for Court to consider the extent to which imposing disclosure obligations on fiduciaries "could conflict with the complex insider trading and corporate disclosure requirements imposed by the federal securities laws" or their objectives.) Plaintiffs seek to impose on the Individual Defendants—none of whom are alleged to be responsible for ExxonMobil's financial reporting (Compl. ¶ 94)—disclosure duties outside of that statutory framework. Plaintiffs' theory should be rejected because it would hold the Individual Defendants "liable under ERISA for failing to do precisely what the securities laws do *not* require of them: immediately disclose inside information at the moment they 'should have known' it was material." *Harris*, 788 F.3d at 927 (Kozinski, J., dissenting) (emphasis in original).

>    **2.    Plaintiffs' Allegations That Defendants Should Have Invested In a "Hedging Product" to Protect Participants from Loss Also Do Not Satisfy *Dudenhoeffer*.**

Plaintiffs offer another proposed alternative: that defendants could have invested Plan holdings in a "low-cost hedging product" to lessen any losses caused by the alleged fraud as it came to light. (Compl. ¶¶ 131–138.) But this theory does not satisfy *Dudenhoeffer* either. Investing Plan assets in a hedging product based on material nonpublic information, to the detriment of other participants in the hedging "pool" that are unaware of that information, would also violate *Dudenhoeffer*'s requirement that the proposed alternative be "consistent with the securities laws." 134 S. Ct. at 2472 (noting that ERISA "cannot require an ESOP fiduciary to perform an action—such as divesting the fund's holdings of the employer's stock on the basis of inside information—that would violate the securities laws"); *see Kopp* v. *Klein*, 722 F.3d 327,

339 (5th Cir. 2013) ("Fiduciaries may not trade for the benefit of plan participants based on material [nonpublic] information."), *vacated on other grounds*, 134 S. Ct. 2900 (2014); *Kirschbaum* v. *Reliant Energy, Inc.*, 526 F.3d 243, 256 (5th Cir. 2008) (same). Likewise, hedging the Plan's Exxon stock holdings while withholding information that the stock price was artificially inflated would constitute common law fraud. *See Am. Tobacco Co.* v. *Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997) (explaining standard for fraudulent concealment under Texas law).

Further, plaintiffs' vague description of the purported "hedging product" does not satisfy *Dudenhoeffer* because the Complaint does not explain how such a product would not cause more harm than good in the circumstances of this case. Less than two weeks ago, another federal district court dismissed with prejudice an ERISA stock-drop complaint brought by plaintiffs' counsel here asserting similar "hedging" allegations, holding that those allegations were insufficient under *Dudenhoeffer*. The court reasoned that the

> plaintiffs' failure to identify what hedging product Defendants should have invested in . . . dooms their claim. Plaintiffs ask the Court to assume that it would have been legal for Defendants to purchase the unspecified hedging product without disclosing the purchase, that the product would have been "low cost," and that it would have "soften[ed] the blow to Plan participants that would come when the fraud was finally revealed." But [*Dudenhoeffer*] requires more than assumptions and speculation . . .

*Graham*, 2017 WL 1113358, at *6; *see also In re Idearc*, 2016 WL 7189981, at *6 (similar); *In re JPMorgan Chase*, 2016 WL 110521, at *4 (similar). The court in *Graham* further rejected plaintiffs' hedging alternative on the ground that it suggests defendants should have diversified the plan's holdings, while the fiduciaries of an ESOP plan "are statutorily exempt from such a duty." *Id*. Indeed, plaintiffs' counsel have asserted the same generic allegations in other recent ESOP stock-drop actions. (*See* Decl. of Jonathan H. Hurwitz dated April 4, 2017, Ex. A ¶¶ 95–102, B ¶¶ 178–185, C ¶¶ 151–154; Exhibits thereto are cited as "Ex."). Because Plan fiduciaries can face ERISA breach-of-fiduciary-duty claims for implementing an allegedly imprudent

16

hedging strategy, plaintiffs' failure to allege specifically how defendants could properly use Plan assets to invest in a purported "hedging product" is a fatal shortfall. *See Bell* v. *Exec. Comm. of the United Food and Com. Workers Pen. Plan for Employees*, 191 F. Supp. 2d 10, 12 (D.D.C. 2002) (discussing complaint based on decision "to approve an options-based hedge strategy").

**B.  The Complaint Does Not Plausibly Allege Any False or Misleading Statements or Actionable Nondisclosure.**

Count I should be dismissed for the independent reason that the Complaint does not plausibly allege that ExxonMobil made any materially false or misleading statements or failed to disclose material information that it was obligated to disclose. *See In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 616 (S.D.N.Y. 2015) (dismissing prudence claim where plaintiffs did not adequately allege undisclosed material information), *aff'd sub nom. Muehlgay* v. *Citigroup Inc.*, 649 F. App'x 110 (2d Cir. 2016); *In re BP p.l.c. Sec. Litig.*, 866 F. Supp. 2d 709, 727 (S.D. Tex. 2012) (Ellison, J.) ("*BP II*"), *vacated on other grounds sub nom. Whitley* v. *BP p.l.c.*, 575 F. App'x 341 (5th Cir. 2014) (same). On the contrary, plaintiffs' conclusory allegations that ExxonMobil's public disclosures misrepresented or failed to disclose material information are refuted by the very documents on which plaintiffs rely, and other information available to the investing public.

**1.  Plaintiffs' Claim that ExxonMobil's Disclosures During the Class Period Failed to Recognize the Environmental Risks Caused by Climate Change Is Inconsistent with the Company's Disclosures And Other Public Information.**

Plaintiffs allege that ExxonMobil failed to disclose that its "internal documents concerning climate change recognized the environmental risks caused by global warming." (Compl. ¶ 62.) But ExxonMobil expressly disclosed before and during the Class Period that "*the risks of climate change are real and warrant thoughtful action.*" (Ex. D at 12 (emphasis added).) In fact, disclosure of climate change risks has been a consistent part of the Company's securities

filings since at least 2007. (*See* Ex. E at 4.) The Company's 2015 10-K, for example, underscored that regulatory requirements could "reduce demand for hydrocarbons, as well as shift hydrocarbon demand toward relatively lower-carbon sources" and thus could affect ExxonMobil's business. (Ex. F at 3.)

The very "internal documents" cited in the "investigative reports" on which plaintiffs rely were themselves publicly available long before the beginning of the Class Period. (*See id.* ¶¶ 58, 62.) The media outlets at the forefront of these investigative reports themselves credit *public* archives for the source materials used. (*See* Exs. G at 4, H at 4.) By November 1, 2015, the core documents relied on by these "investigative reports" were readily accessible to the public. (Exs. G, H.) And the risks of climate change and the possibility of government action to limit carbon emissions have been publicly debated for years and are the subject of innumerable government and scientific reports, press reports, books, movies, and political debates. (*See* Exs. I–K.) The Complaint nowhere identifies any nonpublic information about climate change that was uniquely available to ExxonMobil during the Class Period. The alleged failure to disclose matters of public knowledge cannot support a claim that a company's stock price is inflated. *See, e.g.*, *Kapps* v. *Torch Offshore, Inc.*, 379 F.3d 207, 212 n.6, 214 (5th Cir. 2004).

### 2. Binding SEC Regulations Preclude Consideration of the Impact of Future Regulations when Estimating Reserves, and thus Cannot Be Reconciled with Plaintiffs' "Stranded Assets" Theory.

Plaintiffs allege that ExxonMobil overstated its proved reserves by failing to account for the supposed likelihood that regulatory action to address climate change would leave its assets "stranded." (Compl. ¶¶ 4, 11, 59–62.) But their "stranded assets" theory cannot be reconciled with binding SEC requirements for calculating proved reserves. The SEC requires ExxonMobil to calculate its proved reserves in light of "*existing* economic conditions, operating methods, and *government regulations*." 17 C.F.R. § 210.4-10(22) (emphasis added). Accordingly, ExxonMobil

is expressly prohibited from taking account of potential future regulations (such as those relating to climate change) when estimating its proved reserves. As a matter of law, ExxonMobil's disclosures cannot be false or misleading for abiding by these SEC requirements. *See, e.g.*, *Bulmahn*, 53 F. Supp. 3d at 907 (offering document not false or misleading for not updating proved reserves more frequently than SEC requires).

Plaintiffs' conclusory allegation that future regulatory developments are likely to leave ExxonMobil assets "stranded" is also insufficient because it does not establish any material misrepresentation or omission, let alone that ExxonMobil's stock price was inflated as a result. While plaintiffs purport to disagree with ExxonMobil's views, asserted disagreements with defendants' opinions about future events do not show that ExxonMobil's stock was inflated or form the basis of a claim. *See Plumbers & Steamfitters Local 773 Pension Fund* v. *Can. Imperial Bank of Commerce*, 694 F. Supp. 2d 287, 303 (S.D.N.Y. 2010) ("The allegations regarding [defendant's] write-downs amount to fundamental disagreements with Defendant's business judgments in a tumultuous economic downturn—claims that are not actionable under [the securities laws]."); *see also Omnicare, Inc.* v. *Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015) (federal securities claims cannot be based on plaintiffs' disagreement with defendants' honestly held forward-looking opinions). Indeed, ExxonMobil's opinion that existing reserves were unlikely to be stranded is consistent with that of independent experts. For example, the International Energy Agency ("IEA") has acknowledged that the majority of the world's total primary energy supply will continue to come from carbon-based sources through at least 2040. (*See* Ex. I at 47.)

Plaintiffs allege that the Company "failed to write down any of its proved oil reserves— even while its principal competitors were doing exactly that" due to declining energy prices.

(Compl. ¶ 60.) But that does not remotely suggest that ExxonMobil should have followed suit. Plaintiffs plead no facts showing that ExxonMobil's reserve portfolio was comparable to its competitors' such that its estimated proved reserves would have mirrored theirs. *See, e.g.*, *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 426–27 (D.N.J. 2005) (allegations that company failed to recognize impairments did not state a claim where based solely on declining price of oil and impairments recognized by competitors), *aff'd*, 500 F.3d 189 (3d Cir. 2007).

Plaintiffs also claim that ExxonMobil should have reduced its proved reserves earlier than it did because, in October 2016, it disclosed the possibility it may have to do so in the future. (Compl. ¶¶ 95–96.) But courts have repeatedly rejected claims that disclosure of a need to reclassify an asset support an allegation that a company necessarily should have done so earlier. *See City of Omaha, Neb. Civilian Emps. Ret. Sys.* v. *CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) (disclosure of goodwill impairment does not support claim that company should have recognized impairment earlier). "[F]raud by hindsight"—the allegation that, because "something turned out badly," defendants "knew earlier that it would turn out badly"—does not state a claim for fraud. *Carlton* v. *Cannon*, 184 F. Supp. 3d 428, 469 (S.D. Tex. 2016), *amended on denial of reconsideration*, 2016 WL 3959164 (S.D. Tex. July 22, 2016).

### 3. Plaintiffs' Allegations that ExxonMobil Should Have Written Down the Value of Its Assets Are No More Than Conclusory Disagreements with ExxonMobil's Business Judgments.

Plaintiffs' conclusory allegations that ExxonMobil should have recognized impairments to its assets sooner also fail. In contrast to estimating proved reserves (although the Complaint repeatedly ignores this crucial difference), impairment decisions are governed by U.S. Generally Accepted Accounting Principles (specifically, Accounting Standards Codification 360), which requires an impairment whenever changes in circumstances indicate that the carrying value of a long-lived asset may not be recoverable through either future operations or disposition. (*See* Ex.

L.) As with its proved reserves, plaintiffs allege that the Company should have written down its assets because some of its competitors did so due to declining energy prices, and because, in October 2016, it disclosed the possibility of future impairments. (Compl. ¶¶ 17-18, 60, 63, 69 102). But those allegations fail for the reasons discussed above. (*See supra*, pp. 18-20.) Plaintiffs allege no facts showing that ExxonMobil's assets were overvalued, and plaintiffs' purported disagreement with its business judgments does not state a claim. (*See id.*)

4. **Plaintiffs Have Failed to Sufficiently Allege that ExxonMobil Misrepresented or Omitted Any Material Facts About Its Implied Cost of Carbon.**

Plaintiffs allege that ExxonMobil failed to disclose the implied cost of carbon it applied to its projects, and employed an artificially low cost of carbon, which allegedly led the Company to overstate the reported value of its assets. (Compl. ¶¶ 4, 62, 84.) But, as plaintiffs acknowledge, ExxonMobil disclosed that it assumed an implied cost of carbon in OECD nations of about "$80 per ton by 2040." (Compl. ¶ 79; *see* Ex. F at 42.) Plaintiffs complain that ExxonMobil did not provide additional information about the basis for its judgment about an appropriate cost of carbon, but an issuer is not required to disclose "all the data underlying a[n] . . . opinion such that a shareholder can make an independent determination of value." *Globis Partners, L.P.* v. *Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at *13 (Del. Ch. Nov. 30, 2007). Moreover, for the reasons discussed above, any asserted disagreement by plaintiffs with ExxonMobil's judgment about the appropriate implied cost of carbon does not state a claim. Indeed, the carbon prices used by ExxonMobil are among the highest reported by *any* energy company, and are in line with those estimated by the IEA. (*See, e.g.*, Ex. M at 6; Ex. N at 14–15.) Plaintiffs therefore have failed to plausibly allege any facts suggesting any material misrepresentation or omission concerning ExxonMobil's proxy cost of carbon.

### C.   Plaintiffs Do Not Plausibly Allege That the Individual Defendants Knew or Should Have Known That Company Disclosures Were False or Misleading.

Plaintiffs also fail to state a claim for breach of the duty of prudence because they do not plausibly allege that the Individual Defendants knew that ExxonMobil's statements were materially false or misleading. *See, e.g.*, *In re Citigroup ERISA Litig.*, 662 F.3d 128, 141 (2d Cir. 2011) (affirming dismissal of prudence claim for failure to adequately allege that defendants knew or should have known inside information that should have been disclosed), *abrogated on other grounds by Dudenhoeffer*, 134 S. Ct. 2459; *BP II*, 866 F. Supp. 2d at 727 (dismissing prudence claim for failure to plausibly allege that defendants "were aware of non-public information that would have prompted them to take fiduciary action"). As discussed, plaintiffs concede that the Individual Defendants were not responsible for ExxonMobil's financial reports and public disclosures, but allege that they knew or should have known that these statements were false or misleading due to their corporate positions alone. (Compl. ¶ 94.) Such conclusory allegations do not state a claim. *See BP I*, 2015 WL 1781727, at *13 (rejecting as insufficient unspecific allegations that fiduciary knew of insider information based on "his leadership position"); *see also Rinehart* v. *Akers*, 722 F.3d 137, 150 (2d Cir. 2013) (dismissing claim that defendants should have been aware of information "by virtue of their expertise and their positions"), *vacated on other grounds*, *Dudenhoeffer*, 134 S. Ct. 2459.

### D.   The Complaint Does Not State a Claim for Breach of the Duty of Loyalty.

To plead a breach of the duty of loyalty, a plaintiff must plausibly allege facts showing that the fiduciary did not "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1); *see Harris Trust & Sav. Bank* v. *Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000) (duty of loyalty prohibits self-dealing and certain other conflicted transactions). The Complaint pleads no such facts.

The Complaint alleges that "Defendants' duty of loyalty should have compelled them to be truthful with Plan participants" by making corrective disclosures. (Compl. ¶ 157.) That allegation does not state a claim because the duty of loyalty does not contain a general duty to disclose nonpublic information. *See Kopp*, 722 F.3d at 342 ("We have explicitly refused . . . to judicially engraft onto ERISA's duty of loyalty a broad duty to disclose that would apply regardless of special circumstance or specific inquiry.") (internal quotation marks omitted); *BP I*, 2015 WL 1781727, at *5 ("Section 404(a) contains no explicit duty of disclosure, and previous ERISA plaintiffs' efforts to imbue the statute with such a duty have generally been unsuccessful at the Fifth Circuit."). While fiduciaries may have a duty in certain "special circumstances" to disclose "*[p]lan-related information*—that is, information outlined in ERISA's detailed disclosure and reporting scheme—as opposed to information specific to a particular investment option," *BP I*, 2015 WL 1781727, at *5 (emphasis in original), no such special circumstances are alleged here.

Finally, plaintiffs' duty-of-loyalty claim should also be dismissed because they do not plausibly allege that a loyal fiduciary would have taken any alternative action as discussed above. *See In re Idearc*, 2016 WL 7189981, at *4; *supra* Point I.A.2. Plaintiffs cannot circumvent *Dudenhoeffer* by relabeling their prudence claim as a loyalty claim.

## II.    PLAINTIFFS' CLAIM AGAINST EXXONMOBIL SHOULD BE DISMISSED.

Count II asserts a claim against ExxonMobil for breach of the duty to monitor the Plan Trustee, contending that it "was responsible for the appointment of" the Individual Defendants and thus owed a duty to monitor their compliance with their own fiduciary duties. (Compl. ¶ 161.) To state such a claim, plaintiffs must establish an underlying breach of fiduciary duty. *See Kopp*, 722 F.3d at 344; *In re Idearc*, 2016 WL 7189981, at *7; *BP I*, 2015 WL 1781727, at *19.

Count II thus should be dismissed because, as shown above, plaintiffs do not adequately allege a breach of fiduciary duty by the Individual Defendants.

Count II also fails for the independent reason that ExxonMobil owed no duty to monitor. Unless a corporation is named as a fiduciary in the governing plan documents, its status as a fiduciary is controlled by the definition of fiduciary in the statute. *See In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 899 (S.D. Tex. 2004). That definition provides that a corporation is a fiduciary only "to the extent" it "exercises discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). ExxonMobil is not named as a fiduciary in the Plan, it was not assigned any discretionary authority to monitor, and it is not alleged to have acted in such a capacity. Indeed, the Complaint lacks any allegation that ExxonMobil possessed or exercised control over the Plan's management or assets during the Class Period. It contains only the conclusory allegation that ExxonMobil was a monitoring fiduciary because it "was responsible for the appointment of the Trustee fiduciaries" and thus "had discretionary authority and control over the Plan and investments in ExxonMobil stock." (Compl. ¶¶ 33, 161.) But the power to appoint Plan trustees does not render ExxonMobil an ERISA fiduciary in any other capacity. *See Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1459–60 (5th Cir. 1986) (explaining that if defendants "have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends only to those functions"); *In re BP p.l.c. Sec. Litig.*, No. 4:10-cv-4214, 2015 WL 6674576, at *3–4, *6–7 (S.D. Tex. Oct. 30, 2015) (Ellison, J.) ("*BP III*") (rejecting "conclusory allegations" that corporate defendants "effectively controlled the individual defendants" merely because they could appoint them).

24

III.   **THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.**

The Complaint should be dismissed with prejudice because granting plaintiffs yet another opportunity to amend would be futile. *See United States ex rel. Adrian* v. *Regents of Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004) (leave to amend properly denied where plaintiff could not show "what additional facts he could plead that would correct the deficiencies in his previous complaints"). Plaintiffs had ample opportunity to conform to the established pleading standards and have already amended the Complaint once with the benefit of Plan documents. (ECF No. 20 ¶ 6(a); ECF No. 36.) They are represented by experienced ERISA counsel who have, in their own words, "substantial experience litigating ERISA cases under the *Dudenhoeffer* standard." (ECF No. 16 Decl. of S. Bonderoff in Supp. of Pl.'s Mot. for Appointment of Interim Class Counsel ¶ 11 (noting that Zamansky LLC has served as "lead, co-lead, or sole counsel" in "a number of" post-*Dudenhoeffer* ERISA cases).) And, as plaintiffs acknowledge, they have benefited from extensive public reporting, including statements by state attorneys general about their investigations of ExxonMobil. (Compl. ¶¶ 59, 64, 85, 87–93, 95.) Plaintiffs cannot show that they could plead any additional facts that would cure the Complaint's many deficiencies.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: April 4, 2017

OF COUNSEL:

Mark Trachtenberg
Texas State Bar No. 24008169
S.D. Tex. Bar No. 24584
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, TX 77010-2007
Telephone: (713) 547-2000
Facsimile: (713) 547-2600
mark.trachtenberg@haynesboone.com

Nina Cortell*
Texas State Bar No. 04844500
Daniel H. Gold*
Texas State Bar No. 24053230
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX 75219
Telephone: (214) 651-5000
Facsimile: (214) 651-5940
nina.cortell@haynesboone.com
daniel.gold@haynesboone.com

*pro hac vice applications forthcoming

Respectfully submitted,

  /s/ Daniel J. Kramer
Daniel J. Kramer (*pro hac vice*)
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
dkramer@paulweiss.com

*Attorney-in-Charge for Defendants*

Theodore V. Wells, Jr. (*pro hac vice*)
Daniel J. Toal (*pro hac vice*)
Gregory F. Laufer (*pro hac vice*)
Jonathan H. Hurwitz (*pro hac vice*)
PAUL, WEISS, RIFKIND,
    WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
dtoal@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com

*Attorneys for Defendants*